THE PEOPLE *ex rel.* FRANK SATAS *et al.*, Petitioners-Appellees, *v.* THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

(No. 55510; )

First District—April 19, 1972.

110

Richard L. Curry, Corporation Counsel, of Chicago, (Marvin E. Aspen and Marsile J. Hughes, Assistants Corporation Counsel, of counsel,) for appellants.

Eugene R. Pietkiewicz, of Chicago, for appellees.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This appeal arises from a *mandamus* judgment against defendants, entered in the Circuit Court of Cook County, compelling them to issue a permit to operate a self-service, coin-operated laundromat on the premises located at 2633 West 43rd Street, Chicago, to the plaintiffs, Frank and Veronica Satas.

There are two issues presented for review. The first is whether the *mandamus* judgment granted by the trial court is based upon a clear legal right in that such judgment compels the defendants to act in violation of the zoning ordinance. The second issue is whether the doctrine of estoppel may be applied against the City of Chicago without any positive action by the City to induce plaintiffs' reliance.

On February 5, 1970, Frank Satas entered into a contract to purchase certain real estate located at 2633 West 43rd Street, Chicago. He planned to use the property as a self-service, coin-operated laundromat. The contract to purchase the real estate was drawn up by Charles Norville, a real estate broker. Prior to signing the contract, Norville recommended Satas check the zoning on the property. Satas asked Norville to hold the building for him while he checked the zoning.

On February 6, 1970, Satas obtained a laundromat license form from the City Collector and was informed such application had to be approved by the Zoning Administrator. Satas then presented the license form to an employee of the Zoning Department, James Conlon, for approval. Conlon looked in a book and stamped the license application as conforming to the zoning ordinance. Later, Satas signed the contract for the purchase of the real estate.

On February 10, 1970, Satas contracted with Robert Casey to purchase laundry equipment. Satas made this purchase without applying for a laundromat license or a building permit.

On February 19, 1970, Satas closed the real estate deal with Norville. There was included in the real estate contract a 45-day escape clause if Satas could not obtain a license. The contract was not closed until Satas assured Norville a laundromat in the building conformed with the zoning ordinance and that he could obtain a license.

An architect hired by Robert Casey to draw plans for the installation of the laundry equipment advised Casey a laundromat would not conform to the zoning classification of the building. Casey testified he told the architect he had been advised by the Zoning Department a laundromat was a permitted use at the site. The architect, however, showed him the zoning ordinance would not permit such use. A few days later, Casey testified, he spoke with Harry Manley, Assistant Zoning Administrator, whose duties are to review plans for license applications. During the meeting with Manley, the Zoning Administrator, John P. Maloney, advised Casey a mistake had been made in stamping the Satas application as conforming. Maloney said the zoning of the real estate as a B2—1 district would not accommodate a laundromat as a permitted use. Casey was advised, however, an appeal could be taken to the Board of Appeals.

At the trial, both Zoning Administrator Maloney and Assistant Zoning

Administrator Manley testified as to the administrative procedures of the office of the Zoning Administrator. It was agreed by the parties that employee Conlon's approval of the use of the subject property was in error because a laundromat was not a permitted use in a B2—1 district. Manley also testified no employee has the authority to authorize a use which is not permitted by the zoning ordinance.

Testimony of R. J. McKinnon, a city planner employed by the City of Chicago, was also heard at the trial. He stated that to permit a laundromat in a B2—1 district would open up the district to other non-conforming uses. A real estate broker, John McNamara, testified to the fact that the highest use of the subject property is as a B2—1 district.

After the foregoing testimony was heard, the trial court on July 3, 1970, entered judgment on the *mandamus* count in favor of the plaintiffs and against the defendants. It is from this *mandamus* judgment defendants herein appeal.

The defendants, the City of Chicago, its Mayor, Building Commissioner, Zoning Administrator and City Collector, contend the *mandamus* judgment by the trial court is not based upon a clear legal right because it compels them to perform acts which they are not under a duty to perform by law. More specifically, defendants contend the writ of *mandamus* commands them to act contrary to the zoning ordinance by issuing a license for a coin-operated, self-service laundromat at 2633 West 43rd Street, Chicago. The site in question is zoned B2—1, Restricted Retail District; since a coin-operated laundromat is not a permitted use in a district zoned B2—1, defendants contend they are not under a duty to issue a license.

■■ It is a well established proposition that plaintiffs seeking *mandamus* relief must show they have a clear legal right to the relief demanded, that is, the performance of an act by an officer or officers of a public duty which the officer has failed to perform. (*People ex rel. Heydenreich v. Lyons* (1940), 374 Ill. 557.) Further, no rights can be acquired in a *mandamus* proceeding, the purpose being only to enforce rights already lawfully vested. *Saline Branch Drainage District v. Urbana-Champaign Sanitary District* (1946), 395 Ill. 26.

In the instant case, the trial court issued the *mandamus* writ to enforce rights which not only do not arise under the zoning ordinance but are contrary to the import of such ordinance. The effect of the *mandamus* writ, therefore, is to confer a duty on the defendants which did not exist prior to the issuance of the writ. Moreover, this new duty would require defendants to act in violation of the zoning ordinance.

■■ In situations such as this the law in Illinois is well settled. In

*People ex rel. Brecheisen v. Board of Review of Lake County* (1936), 363 Ill. 106, the court, in reversing a *mandamus* award, said:

"The writ of *mandamus* confers no new authority upon the person or body against whom it is issued—it creates no duty, but will issue only where the duty and authority already exist without the writ."

■■ Since the *mandamus* award in the instant case creates a duty in the defendants to perform acts which the law does not compel them to perform, we agree with defendants' contention that the *mandamus* award by the trial court is not based on a clear legal right.

A second issue presented for review by the defendants is whether the doctrine of estoppel may be applied against the City of Chicago without any positive actions by the City to induce plaintiffs' reliance.

■■ The facts are uncontroverted that James Conlon, an employee in the office of the Zoning Administrator, examined plaintiffs' laundromat license application and erroneously stamped it as conforming with the zoning ordinance. The authority of the Zoning Administrator and his office is set forth in the zoning ordinance. Action, such as that by the employee in the instant case, was clearly beyond the scope of the zoning ordinance. This action by an agent of the City is not a basis for estoppel, however. The general rule is that a city cannot be estopped by an act of its agent beyond the authority conferred upon him. *People ex rel. American National Bank v. Smith* (1969), 110 Ill.App.2d 354.

■■ This court is aware, however, the general rule stated above is qualified. A party may invoke the doctrine of estoppel where action was induced by the conduct of municipal officials, and where, in the absence of such estoppel relief, a substantial loss would be suffered. (*People ex rel. American National Bank v. Smith, supra.*) In the same case, the court stated further:

"[T]he basis for estoppel must be an act of 'the city itself,' such as legislation by the city council, and not just an unauthorized act of a ministerial officer or a ministerial misinterpretation."

■■ In line with this decision, we accept the defendants' contention that the employee of the Zoning Administrator was acting beyond the scope of his authority and, as such, this cannot be interpreted to be a positive act on the part of the City of Chicago to induce plaintiffs' reliance. We therefore hold there is no basis for applying the doctrine of estoppel against the City of Chicago.

For the reasons stated herein, the judgment of the Circuit Court is reversed.

Judgment reversed.

BURMAN and ADESKO, JJ., concur.