ARNOLD KRAMER, Plaintiff-Appellant, *v.* THE CITY OF CHICAGO *et al.*,
Defendants-Appellees.

First District (4th Division)   No. 77-254

Opinion filed March 23, 1978.

Donald L. Bertelle, of J. Herbert Landon, Ltd., and Arnold I. Kramer, both of Chicago, for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Mary Denise Cahill, Assistant Corporation Counsel, of counsel), for appellees.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Arnold Kramer, contract purchaser of a lot located on north Sheridan Road in the city of Chicago, filed a petition for mandamus against defendant, the city of Chicago and Joseph F. Fitzgerald, commissioner of buildings of the city of Chicago, seeking the issuance of a writ of mandamus commanding defendant Fitzgerald to approve certain restaurant plans submitted to him, which allegedly complied with the city's zoning ordinances, and to issue a building permit for the construction of said building on the north Sheridan lot in accordance with such plans. After several proceedings, the petition was dismissed. Plaintiff appeals. We affirm.

This case is a sequel to *American Oil Corp. v. City of Chicago* (1975), 29 Ill. App. 3d 988, 331 N.E.2d 67. The same parcel of property, *viz.*, 7500 North Sheridan Road, Chicago, Illinois, was the subject property in *American Oil* and is the subject property in the instant case. In 1935, the American Oil Corporation purchased the south half of the Sheridan parcel, zoned B4-3 Restricted Service District, and erected a gasoline station which was operational until 1970. The north half of the property, owned by the estate of Dorothy Hammerstein, contained a building used for commercial and residential purposes until it was razed in 1970. In 1969, relying on the B4-3 zoning classification, American Oil entered into a 10-year lease with the Hammerstein estate for the north half of the parcel, with three 5-year extensions and an option to buy at $250,000. Driveway permits were issued after American Oil assured 49th Ward alderman Paul Wigoda that the new gas station on the north half would be properly designed and landscaped, and that another station would not be built on the south half. Also, after these assurances were made, permit applications for the demolition of both the building on the north half and the gas station on the south half and for the erection of a new gas station

on the north half were issued. The new station was constructed thereafter and opened for business in late 1970.

American Oil next advertised the sale of the vacant south half, noting the B4-3 classification. A contract was entered into with Arnold Kramer in November 1971 for the purchase of the property, subject to Kramer's consummation of a binding lease with Denny's Restaurant. Kramer checked the plat book which showed a B4-3 classification. The Denny's lease did not materialize, but Kramer was able to secure International House of Pancakes as a tenant and a new contract was executed.

During these negotiations, and unbeknown to Kramer or American Oil, the Chicago City Council rezoned the subject property to R-4 General Residence District on July 28, 1971. The parties first learned of the zoning reclassification in 1973 when International House of Pancakes applied for a building permit. Legal notice of the public hearing before the Committee on Building and Zoning was published in the Chicago Today newspaper on June 11, 1971, listing the streets which bounded the area in question, but failing to recite the names of the property owners of the address of the property. Actual notice of the hearing was given to the property owners within 150 feet in each direction of the property, but no such actual notice was delivered to American Oil or the Hammerstein estate, the owners of the subject parcel. Alderman Wigoda was the only witness at the June 29 rezoning hearing. He told the committee that the property was vacant and had been vacated by Standard Oil, but he failed to mention the existence of the recently built gas station. The committee adjourned and no other public hearings were held.

Litigation ensued and culminated on June 13, 1975, when the Illinois Appellate Court rendered its opinion in *American Oil* reversing the trial court and holding that the plaintiffs' constitutional right to due process of law was violated, and that the ordinance rezoning the subject property was invalid and void. The property reverted to its original zoning classification of B4-3. While the American Oil case was pending, the Chicago City Council enacted the Lake Michigan and Chicago Lakefront Protection Ordinance (Chicago, Ill., Mun. Code, ch. 194B, §1, *et seq.*, adopted October 24, 1973) (hereinafter the Lakefront Protection Ordinance or the Ordinance). Also, in the meantime, International House of Pancakes, because of the rising cost of construction, was no longer prepared to go forward on the lease.

On March 22, 1976, Kramer was able to obtain a lease with Chart House, Inc., the franchisor of Burger King. About 2 months later, Kramer was able to procure a mortgage commitment from Telegraph Savings and Loan Association in the amount of $285,000 for construction of the family style Burger King restaurant, paying a commitment fee of $5,700. Next, plaintiff filed another application for a permit with the Chicago

Department of Buildings which was accompanied by drawings, plans, and specifications, but a permit was never issued.

On July 22, 1976, a hearing was held before the Chicago Plan Commission regarding plaintiff's permit application to determine whether issuance of the permit would conflict with the Lakefront Protection Ordinance. The commission voted for disapproval. On August 31, 1976, plaintiff filed his petition for mandamus. The plan commission submitted its written resolution to the plaintiff disapproving the permit application on September 15, 1976, in open court. Two days later, the trial court held a hearing on Kramer's petition, and remanded the matter of Kramer's application to the Chicago Plan Commission for immediate consideration and determination, and presumably to prepare findings of fact.

Subsequently, a hearing was held before the Chicago Plan Commission, at which time Commissioner Lewis W. Hill introduced as new evidence his report which included his technical findings and a recommendation seeking denial of Kramer's application, due to the fact that the proposed development was not in conformity with the intent of policies 8, 10, 11, and 14 of the Lakefront Plan of Chicago (Chicago, Ill., An Ordinance Adopting the Policies Contained in the Lakefront Plan of Chicago, Journal of City Council Proceedings, at 6486-87 (Oct. 24, 1973)), and was not in conformity with purposes 1, 7, and 10 of the Lakefront Protection Ordinance (Chicago, Ill., Mun. Code 1973, ch. 194B, §1, art. III, par. 194B-3(a), (g), and (j)), and because the proposed development was inconsistent with article I of the Ordinance. The application was disapproved at the hearing.

On November 4, 1976, the trial court, after examining the pleadings and having heard testimony of witnesses and arguments of counsel, resolved the issues in favor of plaintiff and issued a peremptory writ of mandamus, commanding defendants to issue a building permit in accordance with the plans and specifications filed with Mr. Kramer's application of May 19, 1976. On November 22, 1976, upon defendants' motion the trial court vacated its November 4 order and dismissed plaintiff's petition for mandamus because Mr. Kramer failed to establish that he had a clear right to the issuance of the building permit and because he had failed to allege or prove that his plans were approved by the Chicago Plan Commission. The court stated that an action for mandamus was not the appropriate remedy, but, rather, a complaint for declaratory judgment challenging the constitutionality of the Lakefront Protection Ordinance as applied to his property would be appropriate. This appeal followed.

The issues presented for review are (1) whether the plaintiff established a clear legal right to the relief requested; (2) whether the Lakefront Protection Ordinance was properly applied to plaintiff's property; (3)

whether the Lakefront Protection Ordinance is unconstitutionally vague, indefinite, and incomplete, and effects an unconstitutional delegation of authority; and (4) whether the Chicago Plan Commission's failure to originally file findings of fact as required by the Ordinance constitutes a violation of plaintiff's constitutional right to due process of law.

Regarding the Lakefront Protection Ordinance, plaintiff's arguments are multifold, *viz.*, that the Ordinance does not pertain to plaintiff's right to a permit because plaintiff was previously prevented from obtaining a building permit due to litigation involving a void rezoning classification; that the Ordinance is unconstitutionally vague, indefinite, and incomplete, as men of ordinary intelligence can only speculate as to the meaning of the words "substantial conflict" employed by the Ordinance, and because the 14 policies referred to in the Ordinance are not enumerated therein nor is reference made to where such policies may be found; that the Ordinance effects an unconstitutional delegation of legislative authority to the Chicago Plan Commission; and that the Chicago Plan Commission's failure to file findings of fact as required by the Lakefront Protection Ordinance was a violation of plaintiff's constitutional right to due process of law. Finally, plaintiff notes that issues of statutory constitutionality are properly raised in a mandamus proceeding.

Defendants contend that the trial court properly refused to issue a writ of mandamus compelling the city to issue a building permit where plaintiff failed to show a clear legal right to the permit and where such issuance would be in violation of municipal ordinances. Additionally, defendants argue (1) that the Lakefront Protection Ordinance is valid as applied to plaintiff's property; (2) that the Ordinance is not vague or invalid, and does not constitute an unlawful delegation of legislative authority to the Chicago Plan commission; and (3) that the argument regarding the Chicago Plan Commission's failure to file findings of fact is moot as such findings were subsequently filed.

We first direct our attention to whether or not the Lakefront Protection Ordinance applies herein.

■■ Plaintiff argues that the Lakefront Protection Ordinance is not pertinent to his right to a permit because he was prevented from obtaining a building permit prior to that time by the American Oil litigation. We are obliged to determine this appeal on the basis of the law now in existence in spite of that fact. (*Fallon v. Illinois Commerce Com.* (1948), 402 Ill. 516, 526, 84 N.E.2d 641, 645; *American National Bank & Trust Co. v. City of Chicago* (1974), 19 Ill. App. 3d 30, 32, 311 N.E.2d 325, 327.) Although plaintiff does not specifically mention the *Deer Park* rule (*Deer Park Civil Association v. City of Chicago* (1952), 347 Ill. App. 346, 351, 106 N.E.2d 823, 825; accord, *Fifteen Fifty North State Building Corp. v. City of Chicago* (1958), 15 Ill. 2d 408, 416, 155 N.E.2d 97, 101), he

invokes this rule in his reply brief as an exception to *Fallon*, arguing that he substantially changed his position, expended substantial sums of money, and incurred substantial obligations in reliance upon the probable issuance of a permit, and as such he is entitled to a permit authorizing the original permitted use irrespective of the subsequent zoning classification.

■■ ■ To determine whether plaintiff comes within the *Deer Park* rule, we must decide whether he substantially changed his position in reliance on the probability that a permit would issue, and whether the expenditures made were substantial. At the time the first building permit was applied for in early 1973, the city of Chicago had already prepared the Lakefront Protection Ordinance and it was under study. Although the city could not have arbitrarily or unreasonably refused or delayed the issuance of a building permit at that time, the issuance could have been delayed due to the fact that the city was considering an ordinance under which the issuance of the permit might have been disallowed. (*Chicago Title & Trust Co. v. Village of Palatine* (1959), 22 Ill. App. 2d 264, 268, 160 N.E.2d 697, 699.) In any event, in 1975 International House of Pancakes refused to go through with the lease, thereafter reverting Kramer's contract to a conditional contract. According to the terms of the contract, Kramer's liability was conditioned on his procurement of a firm lease on the premises. It is apparent that when International House of Pancakes backed out of the lease, Kramer no longer suffered a substantial change in position nor incurred obligations in reliance upon the probable issuance of a building permit, and, therefore, he no longer had a vested right to the issuance of a permit irrespective of the Lakefront Protection Ordinance.

■■ Furthermore, it cannot be said that Kramer substantially changed his position or expended substantial sums of money in reliance upon the probable issuance of a building permit in 1976 when he obtained a lease from Chart House and procured a mortgage commitment, because by this time the Lakefront Protection Ordinance had been in effect since 1973, and if Kramer did not have actual notice of the Ordinance, he is bound to have constructive notice of it. We find that plaintiff has failed to demonstrate the applicability of the *Deer Park* rule.

■■ Additionally, we hold that the Lakefront Protection Ordinance is constitutional. The 14 basic policies of the Lakefront Plan of Chicago, referred to in article III of the Ordinance, are not contained in the Ordinance, but this feature is not fatal. The policies were adopted as a separate ordinance by the Chicago City Council on October 24, 1973 and are contained in the Journal of Proceedings of City Council. Furthermore, under article VI, paragraph 194B—6.1(e) of the Ordinance, specific reference is made to the fact that the 14 basic policies contained in the

Lakefront Plan of Chicago were adopted by city council on October 24, 1973. In this respect, we conclude that the Ordinance is specific and definite.

Secondly, the term "substantial conflict" as used in article III, paragraph 194B—3(j) of the Ordinance is not vague and indefinite. "Substantial conflict" in this context means a conflict between The Chicago Zoning Ordinance, Chapter 194A of the Municipal Code of Chicago, and the *essential* purposes of the Ordinance or the 14 policies of the Lakefront Plan of Chicago. See *People ex rel. Peterson v. Omen* (1919), 290 Ill. 59, 65, 124 N.E. 860, 863.

Next, the Ordinance does not effect an unconstitutional delegation of authority to the Chicago Plan Commission. The legislature has the power to delegate authority to an administrative agency so long as the legislators establish strict standards limiting administrative decisions. (See *Southern Illinois Asphalt Co. v. Environmental Protection Agency* (1973), 15 Ill. App. 3d 66, 77, 303 N.E.2d 606, 614, *aff'd* (1975), 60 Ill. 2d 204, 326 N.E.2d 406.) Article VI of the Lakefront Protection Ordinance provides that the decision of the Chicago Plan Commission shall be in conformity with the purposes of the Ordinance and the 14 basic policies contained in the Lakefront Plan of Chicago adopted by city council on October 24, 1973. These purposes and policies are strict and adequate standards limiting the Chicago Plan Commission's administrative decisions.

Finally, whatever problems which might have arisen from the Chicago Plan Commission's failure to enter findings of fact in the first instance were obviated by its subsequent transmittal of findings of fact.

Lastly, in light of our determinations aforesaid, we must decide whether plaintiff is entitled to the relief requested.

● 6, 7   It is well established that mandamus is not a writ of right, but, rather, an extraordinary remedy, and the party seeking such relief must show that he has a clear legal right to the relief requested (*People ex rel. Pignatelli v. Ward* (1949), 404 Ill. 240, 243, 88 N.E.2d 461, 463; *People ex rel. Rappaport v. Drazek* (1975), 30 Ill. App. 3d 310, 314, 332 N.E.2d 532, 535; *Solomon v. City of Evanston* (1975), 29 Ill. App. 3d 782, 790, 331 N.E.2d 380, 386; *Ganley v. City of Chicago* (1974), 18 Ill. App. 3d 248, 254, 309 N.E.2d 653, 658), that is, the performance of an act by an officer or officers of a public duty which the officer has failed to perform. (*People ex rel. Satas v. City of Chicago* (1972), 5 Ill. App. 3d 109, 112, 282 N.E.2d 739, 741.) Furthermore, no rights can be acquired in a mandamus proceeding, the purpose being only to enforce rights already lawfully vested. (*Saline Branch Drainage District v. Urbana-Champaign Sanitary District* (1946), 395 Ill. 26, 37, 69 N.E.2d 251, 256; *People ex rel. Tucker v. Kotsos* (1976), 42 Ill. App. 3d 812, 819, 356 N.E.2d 798, 805; *Satas*, at 112.) Mandamus should be awarded only in the exercise of sound judicial

discretion and only where plaintiff has established a clear right to this extraordinary writ. (*White v. Board of Appeals* (1970), 45 Ill. 2d 378, 381-82, 259 N.E.2d 51, 53; *Century Community Unit School District No. 100 v. McClellan* (1976), 44 Ill. App. 3d 427, 428, 358 N.E.2d 334, 335.) Mandamus is never awarded in a doubtful case. (*Molnar v. City of Aurora* (1976), 38 Ill. App. 3d 580, 583, 348 N.E.2d 262, 265.) The existence of a legal remedy other than mandamus does not necessarily mean that mandamus will not lie (*People ex rel. Shell Oil Co. v. City of Chicago* (1972), 9 Ill. App. 3d 242, 244, 292 N.E.2d 84, 86), but the existence of such remedy may be, in the court's discretion, ground for denying such relief. (*People ex rel. Waber v. Wells* (1912), 255 Ill. 450, 454-55, 99 N.E. 606, 608.) Where the plaintiff seeks issuance of a permit, the plaintiff must show complete compliance with ordinances before the writ will issue. (*Solomon*, at 790; *People ex rel. Citizens Bank & Trust Co. v. Ward* (1963), 39 Ill. App. 2d 20, 187 N.E.2d 533 (abstract).) Where the performance of an official duty or act involves the exercise of discretion, the administrative action is not subject to review or control by mandamus. *People ex rel. Rappaport v. Drazek* (1975), 30 Ill. App. 3d 310, 314, 332 N.E.2d 532, 535.

■■ Plaintiff failed to show that he had a vested right to a permit irrespective of the Lakefront Protection Ordinance. Second, plaintiff could not have successfully sought a writ of mandamus under the Lakefront Protection Ordinance ordering the chairman of the Chicago Plan Commission to issue an approval of his proposed use of the property as his decision involves the exercise of discretion. Plaintiff also failed to show that his building plan had been approved by the Chicago Plan Commission, which is a prerequisite for the issuance of a building permit (Chicago, Ill., Mun. Code 1973, ch. 194B, §1, art. VI, pars. 194B—6.2(g), (h), 194B—6.3(b)). Consequently, he was unable to demonstrate complete compliance with the city's ordinances. From a consideration of the law in this area, it is our opinion that plaintiff failed to establish a clear right to the relief requested, and the trial court correctly denied his petition for a writ of mandamus.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ROMITI and DIERINGER, JJ., concur.