COMMONWEALTH EDISON COMPANY *et al.*, Petitioners, *v.* THE POLLUTION CONTROL BOARD, Respondent.

Third District   Nos. 3—83—0749, 3—84—0024 cons.

Opinion filed September 6, 1984.

Sheldon A. Zabel and Carolyn A. Lown, both of Schiff, Hardin & Waite, of Chicago, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Russell R. Eggert and James C. Siebert, Assistant Attorneys General, of counsel), for respondents.

JUSTICE SCOTT delivered the opinion of the court:

The United States Congress adopted the Resource Conservation and Recovery Act of 1976 (RCRA) to establish a national system for regulating the handling of hazardous wastes. The same act authorized each of the 50 States to develop its own program for regulating hazardous wastes in lieu of the Federal program. The Illinois legislature elected to administer its own hazardous waste program as authorized by RCRA, and to that end, it directed the Illinois Pollution Control Board (IPCB) to promulgate the regulatory framework for hazardous waste management in Illinois. The IPCB accomplished its rule-making task with two sets of regulations, *In re* Phase II RCRA Rules, PCB R82—19, and *In re* Technical Corrections to Phase II RCRA Rules, PCB R83—24. The petitioners in this action, Commonwealth Edison Company and Illinois Power Company, filed petitions for review of specific rules contained in both regulatory dockets. The review is afforded directly before the appellate court pursuant to section 41 of the Environmental Protection Act (Ill. Rev. Stat. 1983, ch. 111½, par. 1041), as authorized by the Illinois Constitution of 1970, article 6, section 6.

The legislative direction to the IPCB requires the Board to adopt rules for the Illinois hazardous waste maintenance program which "are identical in substance to federal regulations or amendments thereto promulgated by the administrator of the United States Environmental Protection Agency." (Ill. Rev. Stat. 1983, ch. 111½, par. 1022.4.) The Federal rules contemplate a hazardous waste program administered by a single agency. The Illinois environmental quality program is characterized by a bifurcated administrative structure. Specifically, both the IPCB and the Illinois Environmental Protection Agency (IEPA) share responsibility for administering Illinois' environmental laws. Many of the complaints raised by the petitioners involve

the IPCB's attempt to adapt the Federal rules to Illinois' bifurcated administrative structure. We will consider each rule complained of in sequence.

■■ Regulations numbered 702.110, 702.148, 702.184(f) and 705.128(d) each make reference to the IEPA's authority to terminate permits for waste management facilities. The petitioners allege that the power to terminate permits is vested in the IPCB, not the IEPA, and that such authority cannot be delegated to the IEPA under the Illinois administrative scheme. As authority for this proposition, the petitioners cite *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 387 N.E.2d 258. The IPCB construes the authority in the challenged sections differently. According to the IPCB's construction, the IEPA only has authority to revoke or terminate permits in conjunction with the permitting process or in the case of a transfer of permit where the proposed transferee fails in some manner to qualify for a permit. We concede that the four regulations in question are somewhat ambiguous as to the IEPA's authority to terminate permits. However, the construction of the regulations proffered by the IPCB is a reasonable one. Where one of several reasonable constructions will permit us to uphold the validity of regulations, that construction is preferred. (*People v. Nastasio* (1960), 19 Ill. 2d 524, 168 N.E.2d 728.) Accordingly, we adopt the construction of the rules proffered by the IPCB, and, so construed, we uphold the validity of the four rules previously cited.

The next series of regulations challenged by the petitioners, sections 724.193, 724.194, 724.197, 724.247 and 724.440, authorize the IEPA to adjust certain requirements for hazardous waste facilities in recognition of the unique characteristics of the sites. Again, the petitioners urge that to allow the IEPA this authority is inconsistent with the bifurcated administrative scheme of the Illinois statute. The petitioners assert that only the IPCB can establish environmental control standards. We cannot agree that the rules enumerated delegate to the IEPA the authority to establish such standards. In an area of the law as complex as environmental regulation, and in a State as diverse as Illinois, to insist upon absolute environmental control standards would produce an unworkable system strait-jacketed by its own rigidity and inflexibility. On the other hand, where environmental control standards are pliant to differing conditions, yet sufficiently ascertainable to be definite and certain, the public policy of protecting the environment is better served. *Cf. Kramer v. City of Chicago* (1978), 58 Ill. App. 3d 592, 374 N.E.2d 932; *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 370 N.E.2d 223; *Melbourne Corp. v.*

*Hearing Board for Nursing Homes* (1973), 14 Ill. App. 3d 589, 302 N.E.2d 729 (ascertainable standards).

■ Section 724.193 permits the IEPA to establish an alternate concentration limit for a hazardous constituent if it finds that the constituent will not pose a substantial present or potential hazard to human health or the environment as long as the alternate concentration limit is not exceeded. In making this evaluation, the IEPA is to be guided by nine enumerated factors. Section 724.193 permits the IEPA to exclude from the list of hazardous constituents specified in a facility permit any constituent not capable of posing a substantial or potential hazard to human health or the environment. Again, in making this determination the IEPA is guided by nine enumerated factors. Section 724.197 provides a statistical procedure for monitoring ground water contamination. It also permits the IEPA to specify alternate procedures if it finds that the alternate procedure reasonably balances the probability of falsely identifying a noncontaminating regulated unit and the probability of failing to identify a contaminating regulating unit in a manner that is comparable to that of the statistical procedure suggested. Section 724.247 specifies levels of liability insurance which a permittee is required to have. The section permits the IEPA to adjust the level of financial responsibility required as may be necessary to protect human health and the environment. Section 724.440 permits the IEPA to waive operating requirements for facilities that incinerate hazardous waste where the waste contains insignificant concentrations of hazardous constituents, unless the IEPA finds that the waste will pose a threat to human health or the environment when burned in an incinerator. The standards which we have recited as contained in each of these rules is flexible, but nevertheless ascertainable in a definite and certain manner. The IEPA is directed to administer each rule according to the definite and certain standard contained therein, and is not given discretion to determine what, if any, standard should be applied. It follows then that we find no improper delegation of the IPCB's authority to establish environmental quality standards, and the rules as promulgated are valid.

■ Prior to the time the Illinois legislature determined to administer a hazardous waste management program which satisfied the requirements of the Federal RCRA, there was in place in the State a program which regulated the disposal of wastes. Administrative rules which govern the administration of the prior waste program are codified in 35 Ill. Admin. Code pt. 807. In the rules proposed to implement the RCRA program in Illinois, the IPCB determined that until the Illinois RCRA program is finally accepted by the United States

Environmental Protection Agency, hazardous waste management owners and operators must obtain permits in accordance with the RCRA and the prior Illinois waste management law. This rule, set forth in section 700.501, is objected to by the petitioners. We agree, as the petitioners point out, that no express statutory authority exists for section 700.501 in the legislative enactment which provided for State rather than Federal administration of the RCRA. Nevertheless, the legislature's action clearly demonstrates an intent to provide for continuing government supervision of this very pressing public health problem. If we are not to frustrate this intent for continuing supervision, we must find the authority to propose reasonable transition rules from the prior program to the new regulatory framework to be implicit in the legislature's action authorizing the IPCB to adopt rules to implement a statewide RCRA program. (34 Ill. L. & Prac. *Statutes* sec. 113 (1958).) Without such transition rules, a gap period would be created in which the State would be powerless to issue any permits for hazardous waste facilities. It follows, then, that until the United States Environmental Protection Agency issues authorization to the State of Illinois to issue permits under a State-administered RCRA program, the proposed transition rule which continues the State permitting process is valid.

Sections 39(c) and 39.2 of the Environmental Protection Act (Ill. Rev. Stat. 1983, ch. 111½, pars. 1039(c), 1039.2) set forth requirements for local approval prior to the location of new pollution control facilities. The petitioners urge that with the adoption of the Federal RCRA program in Illinois, the requirement for local approval no longer applies to RCRA permitted facilities. Petitioners assert that the rules promulgated by the IPCB are incomplete to the extent the rules fail to eliminate the requirement for local site approval. We need not consider this assertion at length, since it is clear that the legislature did not repeal sections 39(c) and 39.2, and until those sections are repealed, they clearly have continuing validity.

■ Finally, the Federal regulations which implement RCRA are accompanied by appendices numbered I, II, IV and V. Those four appendices to the Federal RCRA rules are referenced in appendices A, B, D and E to the rules promulgated by the IPCB. The petitioners contend that to simply refer to the Federal appendices, without actual incorporation of those Federal appendices by reference, renders the appendices invalid. This contention strikes us as somewhat frivolous. Clearly, by referring to the Federal appendices, those provisions become a part of the Illinois regulatory structure. Whether the Federal appendices are incorporated by reference, or simply identified with a

signal "See," the result is the same, and the appendices become a part of the administrative law of this State. See generally 1951 Ill. Op. Att'y. Gen. No. 258.

For the reasons set forth above, we believe the decision of the Illinois Pollution Control Board was correct and the rules which they adopted are valid. The decision of that board is affirmed.

Affirmed.

HEIPLE and STOUDER, JJ., concur.