FIRST DIVISION

May 14, 2001

No. 1-00-0782

ALLAN MONAT, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County

)

v. ) )

THE COUNTY OF COOK, a Municipal )

Corporation, and DONALD WLODARSKI,   )

as Commissioner of the County of Cook )

Department of Building and Zoning, ) Honorable

) Aaron Jaffe,

Defendants-Appellees. ) Judge Presiding.

                                     

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Allan Monat sued Cook County and the commissioner of its Department of Building and Zoning (DBZ), Donald Wlodarski, seeking a writ of 
mandamus
 and an injunction directing 
defendant
s to issue him a building permit.  The trial court granted 
defendant
s' motion for 
summary judgment
.  Monat now appeals.

Monat owned horses and kept them at a stable a considerable distance from his home.  In December 1996 he found a house for sale in the Timberlane Estates subdivision of Northfield Township, in unincorporated Cook County, where nearby homeowners kept horses on their properties.  Monat tried to find out whether he could build a stable on the property available for purchase.

Timberlane Estates is a 20-acre area divided into 30 lots.  One of the lots is about one acre, another is larger than three acres, and the remaining lots are about a half acre each.  The Cook County Zoning Ordinance zoned all of Timberlane Estates R-4, permitting horse stables on any lots at least three acres in size.  The lot available for purchase was about a half acre.  The ordinance permitted horse stables as a special use on small lots zoned R-4.  Cook County Zoning Ordinance §4.44(4)(d) (1976).

The Cook County board of commissioners had already granted a special use for the Timberlane Estates subdivision.  The zoning board of appeals (ZBA) applied for the special use in 1978, describing the use sought as a "Unique Use (Special Use) *** for the private boarding of horses (presently existing)."  The ZBA held public hearings as required by the section of the zoning ordinance concerning special uses.  Cook County Zoning Ordinance  §13.10-4 (1976).  After the hearing, the ZBA issued the following findings and recommendations:

"Proposal: For the private boarding of horses (existing conditions) in the R-4 Single Family Residence District.

Recommendations: That the application's Unique Use (Special Use) as stated in these findings be granted.

This docket was brought *** solely for the continued use for the private boarding of horses.

*** [A] director for the Timberlane Estates Homeowner's Association[] appeared before the [ZBA] in support of this unique use, which has been operating for many years.

***

At the public hearing all the homeowners spoke for the unique use even though not all of them have horses or stables.

*** [T]his subdivision is surrounded by Forest Preserve complete with brid[le] paths.

*** [T]his neighborhood, which is totally isolated from all others, is devoted to those unique uses (horses, wandering deer, roosters, ducks, etc.)

*** [The ZBA] unanimously recommends *** that the Unique Use (Special Use) *** which has been in conformity for ma[n]y years be granted."

The findings, like the application, included a description of Timberlane Estates as the property involved.

The board of commissioner's committee on public service reviewed the ZBA's findings and concurred with the recommendation.  The board of commissioners adopted the committee's report by ordinance dated September 5, 1978, thereby granting the application for special use.  We will refer to the ordinance granting the application as the special use ordinance.

Several persons advised Monat that the special use ordinance permitted the boarding of horses on the lot for sale.  But Monat realized that to build a stable on the small lot he would need a variation from the setback requirements in the zoning ordinance.  Although he did not own the lot, he applied for a variation to permit the construction of a stable near the back of the lot he sought to purchase.

The zoning ordinance provisions concerning variations established the power of the ZBA to grant variations following hearings.  Cook County Zoning Ordinance  §13.7 (1976).  The ZBA held the requisite hearings in February 1997.  Several owners of nearby homes presented evidence and argument in opposition to the request for a variation.  Arguments focused on the proper interpretation of the special use ordinance, while evidence concerned only the effect of boarding more horses in the subdivision.  The ZBA granted the variation, subject to specified conditions concerning the cleaning and maintenance of the stable.  No one appealed from the ZBA's determination.

Monat applied for the proper building permit and signed an offer to buy the lot.  The DBZ issued the permit on November 6, 1997.  On November 10, 1997, the lot's owners accepted Monat's offer.  The contract remained "contingent upon buyer obtaining all written approval/permits" for construction of the stable.  Monat sold his former home and moved into Timberlane Estates in December 1997.

On December 15, 1997, Monat applied to modify his building permit to change the stable's proposed roof.  The DBZ issued a stop work order.  Following procedures established by ordinance, Monat appealed the stop work order to the ZBA.  Cook County Zoning Ordinance §13.8 (1976).  Before the ZBA could hear the appeal, the board of commissioners passed a resolution staying the appeal pending its review of the permit application.

Monat then brought this lawsuit.  In count I, Monat sought 
mandamus
 directing Wlodarski and the county to issue the building permit, based on Monat's legal right to the permit under the special use ordinance.  Monat again sought 
mandamus
 in count II, but he based the request on equitable estoppel.  In count III, also based on estoppel, he sought an injunction and a judgment declaring that he had the right to board horses on his property.  In all three counts he requested damages and attorney fees.

The trial court granted 
defendant
s' motion for 
summary judgment
 on the first count.  In a separate order dated December 15, 1999, the court granted 
defendant
s 
summary judgment
 on the remaining counts.  The court grounded its judgment on findings that Monat would need to violate the Forest Preserve Code to take his horses into the nearby forest, and that the "general consensus of the neighborhood is clearly against the idea of Mr. Monat's keeping horses."

Monat filed a timely motion to reconsider and vacate the order.  He argued that the record did not support the findings of fact, and the forest preserve and its code bore no legal relevance to his right to a building permit.  While he relied in part on exhibits already in the record, he appended to the motion some new exhibits.  He pointed out that the record included affidavits from only three neighbors, and none said anything about the opinions of their neighbors or any general consensus.  He appended affidavits of several neighbors who supported his request for a permit as further proof that the court erred in asserting that the general consensus opposed his request.

 Defendant
s moved to strike the motion to reconsider because Monat had access to the new evidence before he briefed the 
summary judgment
 motion.  The court struck Monat's motion in its entirety by order dated January 31, 2000.  Monat filed his notice of appeal on February 29, 2000.

I

 Defendant
s moved to dismiss the appeal as untimely.  We took the motion with the case. 
 Defendant
s argue that Monat's motion to vacate the trial court's order did not toll the time for appeal because it did not qualify as a proper posttrial motion.

Supreme Court Rule 303 (155 Ill. 2d
 R. 303(a)(1)) provides that an appellant must file his notice of appeal within 30 days after the entry of the order disposing of the last pending posttrial motion.  To count as a posttrial motion, the document filed with the trial court and served on the parties must request appropriate relief, such as reconsideration or vacation of the judgment, and it must allege some grounds for the relief.  
Beck v. Stepp
, 144 Ill. 2d 232, 240, 579 N.E.2d 824 (1991). 
Defendant
s admit that Monat sought appropriate relief, filed the motion properly, and served it on the parties.  Monat also pointed to the trial court's erroneous findings of fact, unsupported by the record, as grounds for the requested relief.

"[T]his court should not impose hypertechnical drafting requirements on postjudgment motions[;] *** only a motion that is 'totally devoid of any indication of points allegedly warranting relief' *** should be found insufficient."  (Emphasis omitted.)  
Town of Sugar Loaf v. Environmental Protection Agency
, 305 Ill. App. 3d 483, 488, 712 N.E.2d 393 (1999), quoting 
Sho-Deen, Inc., v. Michel
, 263 Ill. App. 3d 288, 293 (1994).  The trial court's factual errors provided adequate grounds for the motion to reconsider and vacate the judgment.  The order striking the posttrial motion finally disposed of the last pending posttrial motion, so the notice of appeal, filed less than 30 days later, gave this court jurisdiction to consider the appeal.  We will not consider any documents improperly appended to the posttrial motion.

II

Monat argues first that the court should have granted the writ of 
mandamus
 sought in count I because the special use ordinance established that 
defendant
s had a clear legal duty to issue the building permit and rescind the stop work order.

"Mandamus is the appropriate remedy for a party allegedly aggrieved by the wrongful refusal of a city official to grant him a building permit required by a municipal building or zoning ordinance. 
 [Citation.]
  A petitioner must establish every material fact necessary to show the plain duty of the respondents to act as requested 
[citations]
, and anything less than strict and complete compliance with all necessary and applicable provisions must result in denial of the writ."  
Long v. Elk Grove Village
, 64 Ill. App. 3d 1006, 1008, 382 N.E.2d 79 (1978).

Where the 
plaintiff
 shows full compliance with proper procedures, and the proposed building violates no zoning laws or other ordinances, the court should grant 
mandamus
.  See 
Heerey v. City of Des Plaines
, 225 
Ill. App. 3d
 203, 213-15, 587 N.E.2d 1119 (1992).

Monat fully complied with the procedures for obtaining the variation he needed to construct the stable.  He then appropriately applied to the DBZ for a building permit.  According to the zoning ordinance, the DBZ had to review the application to determine whether the proposed building complied with all ordinances.  The DBZ issued the permit.  Later, the DBZ effectively rescinded the permit by issuing a stop work order, ostensibly because it discovered that the proposed building did not comply with the zoning ordinance.  

Generally, small lots zoned R-4 cannot house stables without a special use.  Monat never applied for a special use.  He claimed the right to build the stable under the special use ordinance.  The ZBA considered this issue and found in Monat's favor when it granted him the variation.  Monat claims that because 
defendant
s did not appeal the ZBA's decision, the court should not permit them to attack it now.

In effect, Monat argues that his right to build the stable is 
res judicata
.  We cannot agree.

"[A] prior determination by an administrative body is not 
res judicata
 in subsequent proceedings before it.  
[Citations.]
  An administrative body has the power to deal freely with each situation as it comes before it, regardless of how it may have dealt with a similar or even the same situation in a previous proceeding."  
Hazelton v. Zoning Board of Appeals
, 48 Ill. App. 3d 348, 351-52, 363 N.E.2d 44 (1977). 

In particular, the court in 
Hazelton
, 48 
Ill. App. 3d
 at 350-52, held that the decision on a petition for a variance for a room addition did not bind a subsequent decision on an application for a permit to build the same addition.  We hold that the variation does not prevent the DBZ from reviewing the permit application to determine whether, in its opinion, the proposed building complies with applicable ordinances.

Thus, to decide whether the trial court should have issued a writ of 
mandamus
,
 we must construe the special use ordinance to determine whether it permits construction of a stable on Monat's lot.  We apply the same rules of construction to ordinances as we apply to statutes.  
Warren v. Zoning Board of Appeals
, 255 
Ill. App. 3d
 482, 486, 625 N.E.2d 1213 (1994).

"In construing a statute, the court must give effect to the intent of the legislature.  
[Citation.]
  To ascertain the legislative intent, the court must look first to the language of the statute, examining the language of the statute as a whole, and considering each part or section in connection with every other part or section. 
[Citation.]
  Where the meaning of a statute is not clear from the statutory language itself, the court also properly considers the purpose of the enactment and the evils to be remedied. 
[Citations.]
  Further, where the statutory language is unclear, the legislative history of the statute may aid the court in determining the legislative intent." 
Antunes v. Sookhakitch
, 146 Ill. 2d 477, 484, 588 N.E.2d 1111 (1992).

The court should resolve any residual ambiguity in a zoning ordinance in favor of the property owner.  
American National Bank & Trust Co. v. Village of Arlington Heights
, 115 
Ill. App. 3d
 342, 345, 450 N.E.2d 898 (1983).  But if the legislature has expressed its intention in clear and unmistakable terms, the court should not look beyond the language of the statute.  
Lubershane v. Village of Glencoe
, 63 
Ill. App. 3d
 874, 878, 380 N.E.2d 890 (1978).

Both parties maintain that the special use ordinance is clear and unambiguous.  We cannot agree.  The ordinance itself only adopts a committee's report, and that report concurs in the recommendations of the ZBA on an application for a special use.  The ordinance unambiguously grants the application, but the ordinance, even considered together with the committee's report, the ZBA findings, and the application, does not clarify the scope of the use permitted.

On the one hand, the ordinance, the committee report, the ZBA findings, and the application all fail to name the particular properties housing horses at the time of the application.  All documents describe the property involved as Timberlane Estates, and not as some isolated lots.  The reference in the ZBA findings to bridle paths in the forest preserve and other "unique uses (horses, wandering deer, roosters, ducks, etc.)" would appear fully applicable to all lots in Timberlane Estates.

On the other hand, the ZBA findings describe the proposed special use as "the private boarding of horses (existing conditions)," and the application describes a similarly limited use.  The ZBA also referred to the "continued use" and the "unique use, which has been operating for many years."

The ZBA findings and recommendations could refer to only the stables existing at the time of the adoption of the ordinance, or it could refer to a special use allowed for all of the lots in the subdivision due to its special character.  In the ordinance the board only adopted a report which concurred in the ZBA's recommendations, so the ordinance does not help resolve the difficulty.  When the court can reasonably interpret an ordinance in two different ways, it is ambiguous, and the court must look beyond the ordinance's language to interpret its meaning.  
People v. Holloway
, 177 Ill. 2d 1, 8, 682 N.E.2d 59 (1997).

In support of the 
summary judgment
 motion, 
defendant
s presented transcripts of the ZBA hearing on the application for special use and a number of letters from Timberlane Estates landowners which the ZBA considered in 1978 before recommending the special use.  Monat contends that we should not consider these materials because 
defendant
s have not shown that the Board of Commissioners saw them before passing the recommended special use ordinance.  We disagree.

For determining legislative intent 

"consideration of the history and course of the legislation is always proper. 
[Citations.]
  Also apropos is consideration of the occasion and necessity for the law, the previous condition of the law on the subject, and the defects, if any, in the former law which were intended to be remedied. 
[Citations.]
   Furthermore, '[i]t is a universally adopted rule of statutory construction that the intention of the legislature is to be gathered not only from the language used but also from the reasons for the enactment and the purposes to be thereby attained.' ***" [Citations.]   
People ex rel. Cason v. Ring
, 41 Ill. 2d 305, 310, 242 N.E.2d 267 (1968).

The ZBA's hearings, required by ordinance as the first step in the procedure for adopting a special use ordinance, form an integral part of its history.  The transcripts of hearings, and the documents presented to the ZBA, constitute useful evidence of the conditions which led to adoption of the ordinance and the extent of the legislative remedy.

The documents show that in February 1978 Cook County sued two homeowners in Timberlane Estates for violating the zoning ordinance.  The county charged both homeowners with having private stables on lots of less than three acres.  In May the ZBA applied for the special use here.  Several neighbors wrote letters saying that they had no objection to the two homeowners keeping their horses in their private stables, and all the neighbors emphasized that the two homeowners kept their properties very clean.

At the outset of the hearing the ZBA chair said the special use would be for "the private boarding of horses that are presently existing in the *** District."  He explained that when the board of commissioners disallowed commercial stables in the area, "it was ascertained that a large number of people in [Timberlane Estates] *** had owned horses from anywhere between ten to thirty years."

A representative of the homeowner's association said:

"I have seen horses come and go through the area *** and we think it would be wrong for them to be denied this use, *** and the horses have always been there ***.

* * *

*** [W]e have never had *** any opposition or objection to horses being allowed in the neighborhood."

The homeowners who had been charged with violating the ordinance spoke on behalf of maintaining their uses.  No witness or board member spoke of expanding the usage.

The immediate problem which led to the special use ordinance was the suit against two homeowners charging them with violating the zoning ordinance.  The ZBA sought to remedy the problem by allowing those homeowners, and any others similarly situated, to continue to keep horses on their properties in Timberlane Estates.  The ZBA did not discover how many other owners had horses.

The ZBA decided to apply for a special use.  Our supreme court has explained that a special use is "'a means of providing for infrequent types of land use which are necessary and desirable but which are potentially incompatible with uses usually allowed in residential *** zones.'"  
Lazarus v. Village of Northbrook
, 31 Ill. 2d 146, 151, 199 N.E.2d 797 (1964), quoting 
Kotrich v. County of Du Page
, 19 Ill. 2d 18, 184 (1960).  The county has a legitimate general welfare interest in limiting intensifications of permitted uses.  
Ford City Bank & Trust Co. v. County of Kane
, 114 
Ill. App. 3d
 940, 953, 449 N.E.2d 577 (1983).

The application and the ZBA report used the phrases "existing conditions," "continued use," and "presently existing."  This case does not involve a commercial use, for which a limitation to the existing use might impermissibly create a monopoly.  See 
Nehrbass v. Village Tavern of Long Grove, Inc.
, 104 
Ill. App. 2d
 392, 396, 244 N.E.2d 215 (1969).  While we believe that the comments of the representative of the homeowner's association support allowing the boarding of horses on all of the properties, we find the comments alone insufficient to overcome the evidence of a grant limited to the existing use.  

We hold that the special use ordinance permitted continued housing of horses on lots with stables at the time of the enactment of the ordinance, but it did not permit expansion of the special use to all of the lots in Timberlane Estates.  See 
Ford City
, 114 
Ill. App. 3d
 at 953.  Because Monat's lot had no stable, and no horses boarded there when the county granted the special use, the special use ordinance provides no basis for his claim of a right to the issuance of a permit to build a stable.  The ordinance applicable to all lots zoned R-4 shows that Monat had no right under the ordinance to the building permit he sought.  Accordingly, the trial court correctly granted 
defendant
s 
summary judgment
 on count I of Monat's complaint.

III

Estoppel provides the grounds for the remaining counts.

"A party seeking to invoke the doctrine of equitable estoppel against a municipality must establish (1) an affirmative act on the part of the municipality; (2) that the affirmative act induced the complained-of action; and (3) that it substantially changed its position as a result of its justifiable reliance. 
[Citation.]
  The affirmative acts which induce reliance must be the acts of the municipality, such as legislation, and not merely the unauthorized acts of a ministerial officer."  (Emphasis omitted.)  
Tim Thompson, Inc. v. Village of Hinsdale
, 247 Ill. App. 3d 863, 878-79, 617 N.E.2d 1227 (1993). 

Where a party invokes estoppel against a governmental body performing governmental functions, estoppel will lie only in extraordinary or compelling circumstances.  
Tim Thompson
, 247 
Ill. App. 3d
 at 878.

In 
County of Du Page v. K-Five Construction Corp.
, 267 
Ill. App. 3d
 266, 642 N.E.2d 164 (1994), K-Five operated an asphalt plant until 1975, then built a new one in 1985.  When some nearby residents complained, the director of the Du Page County building department wrote letters to them, in which he said the plant was a lawful nonconforming use.  The director sent copies of the letters to K-Five.  In 1991 the county sued to close the plant, alleging that it violated the zoning ordinance.

The appellate court agreed with the county, finding that K-Five lost the right to maintain the nonconforming use after it stopped operating the asphalt plant in 1975.  
K-Five
, 267 
Ill. App. 3d
 at 271-73.  But the court held the county equitably estopped from enforcing the ordinance.  The court rejected the county's claim that only the director of the county development department could determine possible zoning violations.  The ordinance established that the director of that department and other duly appointed zoning enforcement officers and assistants had authority to decide whether a building violated zoning laws.  The court held that the director of the building department had such authority, so his letters to nearby homeowners constituted affirmative acts of the county.  
K-Five
, 267 
Ill. App. 3d
 at 274-75.  K-Five justifiably relied on the copies of those letters the building department sent it.

Here, Cook County acted more affirmatively.  Monat followed proper procedures for obtaining a variation so that he could build his stable.  The ordinance requires the ZBA to hold a hearing on the proposed variation and to grant or deny the request.  The ZBA held the hearing, and owners of neighboring properties expressed their opinions concerning the construction of a stable on Monat's lot.  The ZBA, construing the special use ordinance, found that Monat had a right to construct the stable.  It granted the variation with conditions to address the sanitation concerns of the neighbors.  Cook County did not appeal the ZBA's decision.

 Defendant
s argue that granting of the variation cannot qualify as an affirmative act of the county, because the ZBA never has the authority to interpret any special use ordinance.  The applicable section of the zoning ordinance establishes that before granting a variation, the ZBA must determine whether the variation would confer on the applicant any special privilege not available to other properties in the same district.  Cook County Zoning Ordinance  §13.73(7) (1976).  Here, the ZBA could not so determine without construing the special use ordinance.

Moreover, 
defendant
s admit that the DBZ has authority to construe a special use ordinance when deciding whether to grant a building permit, and any party seeking to challenge the DBZ's decision on such a permit must appeal to the ZBA.  Cook County Zoning Ordinance §§13.53, 13.82 (1976).  In such a proceeding, again, the ZBA has a legal duty to construe any pertinent special use ordinance.

Illinois Wood Energy Partners, L.P. v. County of Cook
, 281 
Ill. App. 3d
 841, 667 N.E.2d 477 (1995), does not hold to the contrary.  In that case the 
plaintiff
 asked the ZBA for an interpretation of an ordinance.  The ZBA informed the zoning administrator of its interpretation.  The 
plaintiff
 began construction in reliance on the ZBA's interpretation.  The appellate court held that the request for an interpretation of the ordinance did not qualify as an appeal or any other proceeding recognizable under the applicable ordinance.  
Illinois Wood Energy
, 281 
Ill. App. 3d
 at 848-49.  Therefore, the court found the request did not give the ZBA authority to interpret the ordinance for the zoning administrator or anyone else.  Here, by contrast, the zoning ordinance gave the ZBA express authority to decide whether to grant the application for a variation, and in the course of considering the application it necessarily decided the meaning of the special use ordinance.

We find that the variation permitting construction of the stable qualifies as an affirmative act of the county.  See 
Marziani v. Lake County Zoning Board of Appeals
, 87 
Ill. App. 3d
 425, 428-29, 409 N.E.2d 118 (1980).  The county further affirmatively acted when the DBZ granted Monat the building permit for his stable.  See 
Cites Service Oil Co. v. City of Des Plaines
, 21 Ill. 2d 157, 161-63, 171 N.E.2d 605 (1961).

Monat presented persuasive evidence that he would not have purchased the property if he knew the county would bar him from building his stable.
 
 Defendants do not contest that evidence
 
or offer any evidence that their acts did not induce the purchase.

But 
defendant
s argue that Monat did not change his position substantially enough for this case to present the kind of extraordinary or compelling circumstances needed to estop a municipality.  The trial court never reached the issue.  Monat did not start construction before the DBZ issued the stop work order.  He claims that he expended considerable time and money obtaining the permit and moving, but sale of the home in Timberlane Estates may compensate him for much of the money spent.  Reasonable persons could draw divergent inferences from the record concerning the extent of Monat's change of position in reliance on 
defendant
's acts.  See 
Illinois Mason Contractors, Inc. v. City of Wheaton
, 19 Ill. 2d 462, 465, 167 N.E.2d 216 (1960); 
People ex rel. Shell Oil Co. v. Town of Cicero
, 11 
Ill. App. 3d
 900, 904-05, 298 N.E.2d 9 (1973).  Therefore, the court should not resolve the issue on the motion for 
summary judgment
.  
Pyne v. Witmer
, 129 Ill. 2d 351, 358-59, 543 N.E.2d 1304 (1989).

IV

 Defendant
s claim that Monat has not prayed for awardable relief in counts II and III.  In both counts Monat sought damages, but the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/2-104, 2-206 (West 1998)) expressly precludes damage awards for the failure to award a building permit, or the revocation of a permit already issued.  
P B M Stone, Inc. v. Palzer
, 251 
Ill. App. 3d
 390, 397, 622 N.E.2d 71 (1993).

In count II, Monat sought 
mandamus
.  
Mandamus
 will lie only to enforce rights already lawfully vested; parties can acquire no new rights in 
mandamus
 proceedings.  
People ex rel. Satas v. City of Chicago
, 5 
Ill. App. 3d
 109, 112-13, 282 N.E.2d 739 (1972). Where the 
plaintiff
 seeks issuance of a permit, the 
plaintiff
 must show complete compliance with all applicable ordinances before 
mandamus
 will issue.  
Kramer v. City of Chicago
, 58 
Ill. App. 3d
 592, 599, 374 N.E.2d 932 (1978).  If the 
plaintiff
's legal right is unclear, 
mandamus
 will not lie.  
Ganley v. City of Chicago
, 18 
Ill. App. 3d
 248, 254, 309 N.E.2d 653 (1974).

In 
Cos Corp. v. City of Evanston
, 27 Ill. 2d 570, 190 N.E.2d 364 (1963), the 
plaintiff
 acquired property and showed city officials building plans fully complying with the zoning ordinance.  The city passed an amendatory ordinance, with which the plans did not comply, and denied the permit.  Our supreme court held:

"[P]laintiff's substantial change in position by expenditures in reliance upon the probability of the issuance of a building permit, based upon the existing zoning ordinance and the assurances of the city officials, entitles it to issuance of the permit."  
Cos
, 27 Ill. 2d at 576-77.

Accordingly, the court affirmed the judgment awarding the 
plaintiff
 a writ of 
mandamus
.  See also 
Mattson v. City of Chicago
, 89 
Ill. App. 3d
 378, 411 N.E.2d 1002 (1980); 
Pioneer Trust & Savings Bank v. County of Cook
, 71 Ill. 2d 510, 377 N.E.2d 21 (1978).

In this case, unlike 
Cos
, the 
plaintiff
's plans never fully complied with the applicable ordinances.  Because this case does not involve an amendment of the zoning ordinance to disallow the building, 
Cos
 does not apply.  See 
Ganley
, 18 
Ill. App. 3d
 at 254.  The zoning ordinance conflicts with Monat's right to estoppel against 
defendant
s, leaving 
Monat's right to the issuance of the permit less than clear.  We agree with 
defendant
s that 
mandamus
 is not appropriate relief in this case.  Accordingly, we affirm the award of summary judgment in favor of 
defendant
s on count II of the complaint.

Courts have found injunctions appropriate in other zoning cases, even where the municipality misinterpreted its ordinance and later correctly interpreted the ordinance as disallowing the proposed building.  
Cites Service
, 21 Ill. 2d at 164; 
K-Five
, 267 
Ill. App. 3d
 266.  To obtain an injunction, Monat must show that he has a protectible interest that will suffer irreparable damage without the injunction and he has no adequate remedy at law.  
Lubeznik v. HealthChicago, Inc.
, 268 
Ill. App. 3d
 953, 960-61, 644 N.E.2d 777 (1994); 
Brown v. Murphy
, 278 
Ill. App. 3d
 981, 994-95, 664 N.E.2d 186 (1996).  He has presented evidence that could support a finding that he has a protectible interest in building the stable, and he suffers continuing harm from the revocation of his building permit.  Due to 
defendant
s' tort immunity, Monat has no remedy at law.  Thus, he has made a sufficient case to survive 
summary judgment
 on the count seeking an injunction estopping 
defendant
s from denying him the building permit.

Finally, 
defendant
s contend that the court must protect the rights of nearby property owners who oppose Monat's plan to build a stable.  Those owners properly advised the ZBA of their opinions and their reasons in the hearing on Monat's application for a variation.  They apparently had the right to appeal from the ZBA's determination (see 
Winston v. Zoning Board of Appeals
, 407 
Ill. 
588, 594-95, 95 N.E.2d 864 (1950)), and they chose not to pursue such an appeal.  Therefore, they may also be estopped from preventing the construction.  See 
Richards v. City of Highland
, 59 
Ill. App. 3d
 692, 696, 375 N.E.2d 1023 (1978).

We agree with 
defendant
s' interpretation of the special use ordinance: owners of lots that housed horses at the time of the ordinance's enactment had the right to continue the existing use, but owners of other lots did not acquire authority to expand the use to their lots.  Thus, we find that the trial court correctly granted 
defendant
s 
summary judgment
 on count I.  In count II Monat asked the court to mandate the issuance of a building permit for a building that would violate the zoning ordinance.  Because mandamus is not appropriate relief here, the court correctly granted 
defendant
s 
summary judgment
 on count II.  But Monat presented facts that could support a finding that 
defendant
s should be estopped from denying him the building permit, because he changed his position in justifiable reliance on 
defendant
s' affirmative acts.  Reasonable persons could disagree concerning the substantiality of Monat's reliance and whether the case involves sufficiently compelling circumstances to warrant estoppel against a municipality.  Therefore, we reverse the judgment in favor of 
defendant
s on the third count of Monat's complaint, and we remand for further proceedings consistent with this opinion.

Affirmed in part and reversed in part. Cause remanded.

FROSSARD and TULLY, JJ., concur.