THOMAS O. MARZIANI *et al.*, Plaintiffs-Appellants, *v.* LAKE COUNTY ZONING BOARD OF APPEALS *et al.*, Defendants-Appellees.

Second District   No. 79-133

Opinion filed August 13, 1980.

John R. Sloan, of Hall, Meyer, Fisher, Holmberg & Snook, of Waukegan, for appellants.

Dennis P. Rvan, State's Attorney, of Waukegan (Gary Neddenriep, Assistant State's Attorney, of counsel), for appellees.

Mr. JUSTICE NASH  delivered the opinion of the court:

Plaintiffs, Thomas O. Marziani and Pearl Marziani, appeal from an order of the Circuit Court of Lake County which confirmed, on administrative review, the decision of the zoning board of appeals upholding the revocation of a building permit issued to plaintiffs.

In 1968, plaintiffs purchased a small island located near Fox Lake in Lake County upon which they wished to construct a single-family residence. They conferred with Joseph Cannon, then director of the Lake County building and zoning department, and apparently were advised that a bridge must be constructed to the island from the mainland before a building permit could be issued. They proceeded to do so and expended $5,000 in the construction of a 60-foot bridge which connected the island to North Wilson Road. A building permit was thereafter issued to them on October 1, 1968, for the construction of the single-family residence on a portion of the island. To that end plaintiffs then proceeded to construct a private roadway, septic system, well and pumping

facilities, install electric poles, conduct soil tests and employ engineering services at costs totaling $7,700.

The initial building permit expired by its terms in 1970 and before construction had been completed by plaintiffs. On September 18, 1973, however, their application for a new building permit to continue the same construction on their island property was granted and the permit was issued to them for that purpose by William Maxey, who was then director of the building and zoning department. Plaintiffs proceeded toward construction of their residence by rebuilding the road and approaches at a cost of $1,000; installing oak pilings intended to raise and support the house; purchased lumber and equipment at a cost of $6,500; constructed forms for pouring footings, which forms were inspected and approved by the Lake County building inspector on November 16, 1973; excavated a site for installation of a crane to be used in pouring concrete; and worked on concrete pouring and forms during the period from April to August 1974. On August 30, 1974, Robert Streicher, who was then the director of the building and zoning department informed plaintiffs by letter that their building permit was revoked because single-family dwellings were not allowed in a flood plain and, secondly, because the work authorized under the permit had been suspended or abandoned for more than six months, both contrary to the provisions of the Lake County Zoning Ordinance. The decision of the director was upheld by the Lake County Zoning Board of Appeals and its decision was confirmed by the circuit court.

The issues which we consider on this appeal are (1) whether the doctrine of equitable estoppel applies so as to bar revocation of plaintiffs' building permit and (2) whether plaintiffs had suspended the authorized work for more than six months so as to void their building permit.

Article 4, section II of the Lake County Zoning Ordinance defines a flood plain generally to be land of an elevation equal to or lower than the level of the highest flood of record, and provides, at paragraph C: "Any structures which are constructed on the flood plain must be so constructed that they will not be damaged by flood and will not represent a hazard at the time of flooding." While the permitted uses of land within a flood plain under the terms of the ordinance do not include single-family dwellings and while it is also provided that "no principal building shall be located on the flood plain," some of the uses allowed do appear to contemplate construction of buildings for the permitted purposes. Amphitheaters, boat houses, boat rental and sales, bulk materials storage, day camps, military camps, conservation clubs, equipment storage, county clubs, drivein theaters, helioports and marinas are some of the permitted uses of flood-plain property. Other sections of the ordinance permit filling of flood-plain land and require that if a filled area is to be

used as a construction site it must be raised to a minimum of 18 inches above the flood base elevation and that any habitable floor of a new structure located upon such fill in a flood plain shall be not less than two feet above the flood elevation. Lake County, Illinois, Zoning Ordinance, article 4, sections II (E) (3) and (4).

Section 114.1 of the Basic Building Code/1970, promulgated by the Building Officials and Code Administrators International, Inc. (the BOCA Code), and adopted by Lake County, provides that its building official, the director in this case, shall examine applications for permits and reject them in writing if they or the building plans fail to conform to the requirements of law but that: "If he is satisfied that the proposed work conforms to the requirements of the code and all laws and ordinances applicable thereto, he shall issue a permit therefor as soon as practicable."

Plaintiffs contend that, in reliance upon the representations of the directors of the building and zoning department and the two building permits issued to them by these officials for the desired construction, they have made expenditures of approximately $23,000 toward construction of the residence on their land and that the county should now be estopped from revoking their current permit. The defendants, however, contend that construction of a single-family residence on a flood plain is not a permitted use under the ordinance, that the building official who issued the current permit to plaintiffs exceeded his authority in doing so, and that the permit is a nullity.

The leading case stating the rules governing application of estoppel against a governmental body is *Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157, 171 N.E.2d 605. There plaintiff had purchased property for the construction of a gasoline filling station and had acquired a building permit issued to its predecessor in title, the transfer receiving the approval of the building commissioner. Plaintiff had expended over $5,000 in construction costs when construction was halted by the city because the property was located within 300 feet of a church contrary to city ordinance. Before acquiring the building permit plaintiff had been furnished with a copy of an outdated city ordinance in which gasoline stations were prohibited only within 100 feet of a church and the city had allowed almost seven months to pass after its issuance before revoking the permit. In *Cities Service*, the court stated:

> "The general rule is that a city cannot be estopped by an act of its agent beyond the authority conferred upon him. [Citations.] It has been stated that anyone dealing with a governmental body takes the risk of having accurately ascertained that he who purports to act for it stays within the bounds of his authority, and that this is so even though the agent himself may have been unaware of the limitations on his authority. [Citation.] In matters involving strictly

public rights the courts do not interpose to hold the municipality estopped except under special circumstances which would make it highly inequitable or oppressive to enforce such public rights. [Citation.]

The general rule is qualified, however, to enable a party to invoke the doctrine where his action was induced by the conduct of municipal officers, and where in the absence of such relief he would suffer a substantial loss and the municipality would be permitted to stultify itself by retracting what its agents had done. [Citation.]" (21 Ill. 2d 157, 160-61, 171 N.E.2d 605, 607-08.)

The court held that estoppel applied in that case as the plaintiff had expended substantial sums of money in reliance upon the permit after being induced to believe no violation was involved and with the apparent acquiescence of the city officials.

These principles were applied by the court in *City of Peru v. Querciagrossa* (1979), 73 Ill. App. 3d 1040, 392 N.E.2d 778, wherein it found defendants were justified in relying upon express instructions given to them by the city zoning inspector concerning the permissible set-back lines for construction of a building and upon the building permit the inspector issued to them. As this conduct of the city official clearly induced defendants to make substantial expenditures in carrying out their building plans, the city was estopped to revoke the permit when it subsequently became aware that defendants' proposed dwelling would violate the city zoning ordinance. See also *City of Marseilles v. Hustis* (1975), 27 Ill. App. 3d 454, 325 N.E.2d 767; *Wachta v. Pollution Control Board* (1972), 8 Ill. App. 3d 436, 289 N.E.2d 484.

Defendants contend that a governmental body cannot be estopped by reason of a mistake or unauthorized action taken by its agents, citing *Ganley v. City of Chicago* (1974), 18 Ill. App. 3d 248, 309 N.E.2d 635, *People ex rel. Satas v. City of Chicago* (1972), 5 Ill. App. 3d 109, 282 N.E.2d 739, and *Johnson v. City of Chicago* (1969), 107 Ill. App. 2d 182, 246 N.E.2d 115. While we need not here determine whether the directors of the building and zoning department erred or exceeded their authority in this case, it would not be unreasonable for them or plaintiffs to conclude from the ambiguous terms of the ordinance that by raising the floor level of the structure seven feet above flood stage on pilings, as provided in their plans, that plaintiffs met the requirements of the ordinance. It did permit new structures to be built in a flood plain over a filled area if the site was raised 18 inches over the floor elevation and if any habitable floor was located at least 2 feet above that elevation. As plaintiffs designed the building to be raised seven feet above that elevation, the directors may well have been satisfied that the requirements of the applicable ordinances were met. The building code does give the

official administering it a degree of discretion in directing that he shall issue a building permit "if he is satisfied that the proposed work conforms to the requirements of the Code * * *." While we are aware that single-family residences are not one of the permitted uses under the ordinance for land within a flood plain, conceivably, although we think erroneously, the parties considered that the elevated construction under the plans raised the property out of the flood plain.

In *Satas*, relied upon by defendants, estoppel was not applied where the only act on the part of agents of the municipality was the erroneous approval of an application for a laundromat license as conforming to the zoning ordinance by an employee in the office of the zoning administrator. Again, in *Ganley*, the municipal official did nothing more than to issue building permits for three parcels of land and in no other way actively misled the applicant, a real estate developer whose construction was halted three weeks after issuance of the permit. In *Johnson*, an invalid building permit was issued to plaintiff and was revoked eight days later; during that period he expended less than $1700 pursuant to the permit. Plaintiff there was not induced by the city or its officers to assume obligations and was charged, under the evidence, with notice of the want of authority to issue the invalid permit. Similarly, we distinguish *City of Rockford v. Sallee* (1970), 129 Ill. App. 2d 75, 262 N.E.2d 485, where there was no evidence in the record of the amount of expenditures made by defendants in purported reliance upon an erroneously issued building permit and insufficient evidence of acts of governmental authority so as to invoke the doctrine of equitable estoppel.

In our view the facts in the present case will clearly support application of the doctrine of estoppel. Plaintiffs in apparent good faith made substantial expenditures in reliance upon a series of official acts amounting to inducement by agents of the county. They were first advised in 1968 that a bridge must be constructed before the permit could be issued, and when they did so they received it. In 1973, their application for the single-family construction in the flood plain was renewed; again it was granted by the county official whose duty it was to consider such applications, and it was allowed to remain in force for 11 months before being revoked. During the construction under these permits the county health department also issued to plaintiffs a permit for a septic system for the premises, and the county building inspector on two occasions made inspections of the work and approved it after plaintiffs made certain recommended adjustments in the forms for footings. We conclude that this conduct of the county's agents considered with the substantial expenditures made by plaintiffs, requires application of the doctrine of equitable estoppel against the county, and we so do.

We next consider whether the evidence supports the finding of the

zoning board of appeals that the work authorized under the second building permit had been suspended for a period of more than six months so as to invalidate plaintiffs' building permit. Section 114.2 of the BOCA Code, as adopted by the county, provides:

"Any permit issued shall become invalid if the authorized work is not commenced within six (6) months after issuance of the permit, or if the authorized work is suspended or abandoned for a period of six (6) months after the time of commencing the work."

Defendants contend that plaintiffs suspended work from November 18, 1973, when forms for the footings were constructed, to August 28, 1974, when concrete was poured. They argue that "authorized work" under section 114.2 means actual on-site construction, as opposed to planning and site preparation. In support, defendants rely on *First National Bank & Trust Co. v. City of Rockford* (1977), 47 Ill. App. 3d 131, 361 N.E.2d 832, wherein this court considered a similar ordinance which required commencement of the authorized work within 90 days of issuance of a building permit. We there found that demolition of an existing building, debris removal and grading of the construction site could not alone be considered commencement of the work authorized by the permit.

It is undisputed, however, that the authorized work in this case did commence within six months of issuance of the permit. Indeed, the work had progressed well beyond the mere site preparation stage; considered in light of the unique nature of this construction project and the associated obstacles to be surmounted, the installation of pilings and forms for concrete footings represented substantial progress in the work authorized by the permit. We therefore find *First National Bank & Trust Co. v. City of Rockford* to be inapposite.

In April of 1974, plaintiffs excavated a site to accommodate a crane for pouring concrete, and during that month they mixed concrete by hand and used the crane to pour it. Their efforts were slowed by both the intervention of a cement workers' strike and the breakdown of their cement mixer, but they completed pouring of the footings after inspection and approval of the forms by the Lake County building inspector on August 28, 1974.

The zoning board found that "no substantial work has been done at the job site for a period of at least eleven (11) months and therefore Section 114.2 of the B.O.C.A. Code would apply." We disagree. The language of section 114.2 does not require that "substantial" work be done but prohibits suspension or abandonment of the work for a period of six months. The conclusion of the zoning board is not supported by the evidence.

For these reasons the judgment of the Circuit Court of Lake County is reversed and this cause is remanded with directions that plaintiffs'

building permit, which was revoked August 30, 1974, be ordered to be reinstated and considered to have been suspended during the period from its revocation to reinstatement.

Reversed and remanded.

UNVERZAGT and WOODWARD, JJ., concur.